[No. B017895. Second Dist., Div. Six. Dec. 2, 1986.]

WILLIAM BURCIAGA, a Minor, etc., Plaintiff and Appellant, v.
ST. JOHN'S HOSPITAL et al., Defendants and Respondents.

**COUNSEL**

Manuel Hidalgo and Robert H. Sulnick for Plaintiff and Appellant.

Patterson, Ritner, Lockwood, Zanghi & Gartner, Horvitz, Levy & Amerian, Barry R. Levy and Stuart B. Esner for Defendants and Respondents.

**OPINION**

**GILBERT, J.**— Here we hold that a staff physician of a hospital, who treats another doctor's patient at the hospital in response to a medical emergency, is protected by the Good Samaritan laws.

Plaintiff William Burciaga, through his mother and guardian ad litem, appeals the summary judgment entered in favor of defendant Edward Gibson, M.D. We affirm the judgment because there are reasonable, uncontradicted inferences that Gibson owed no duty of emergency care to plaintiff. He is entitled therefore to the shield of the Good Samaritan laws. (Bus. & Prof. Code, §§ 2395, 2396; *McKenna* v. *Cedars of Lebanon Hospital* (1979) 93 Cal.App.3d 282, 288 [155 Cal.Rptr. 631].)

## FACTS

William, born at St. John's Hospital at 9:30 a.m. on September 12, 1980, was delivered by his mother's obstetrician, Foster Taft. Taft observed that the umbilical cord was entangled about William's neck and feet and that he suffered from severe interuterine anoxia. Taft requested a pediatrician to the delivery room "stat."

Gibson, a pediatrician then visiting his hospital patients, responded to the call within a minute. He discovered that the infant was cyanotic and "having respiratory distress." Gibson applied suction to William and administered oxygen.

Gibson promptly decided that William required treatment in a neonatal intensive care unit. Since St. John's Hospital did not provide this service, Gibson contacted the Ventura County General neonatal unit. This neonatal unit was full, however, so Gibson sought other placement. Children's Hospital in Los Angeles accepted William about 5 p.m. that day. In the interim, Gibson cancelled his office appointments and treated William.

William, now six years old and suffering cerebral palsy and permanent neurological damage, brought this malpractice action against Taft, Gibson and St. John's Hospital. He contends that Gibson did not commence treatment promptly and that he delayed in transferring him to a neonatal unit. Gibson moved for summary judgment contending that the Good Samaritan laws—Business and Professions Code sections 2395 and 2396[1]—shield him from liability. The trial judge granted summary judgment for Gibson.

---

[1]Business and Professions Code section 2395 states: "No licensee, who in good faith renders emergency care at the scene of an emergency, shall be liable for any civil damages as a result of any acts or omissions by such person in rendering the emergency care. 'The scene of an emergency' as used in this section shall include, but not be limited to, the emergency rooms of hospitals in the event of a medical disaster. 'Medical disaster' means a duly proclaimed state of emergency or local emergency declared pursuant to the California Emergency Services Act (Chapter 7 (commencing with Section 8550) of Division 1 of Title 2 of the Government Code).

"Acts or omissions exempted from liability pursuant to this section shall include those acts or omissions which occur after the declaration of a medical disaster and those which

On appeal plaintiff contends sections 2395 and 2396 do not shield Gibson because (1) an emergency situation did not exist and (2) as an active member of the hospital staff, Gibson had a duty to treat infants born at the hospital. (*Colby* v. *Schwartz* (1978) 78 Cal.App.3d 885 [144 Cal.Rptr. 624].)

## DISCUSSION

■ Plaintiff first contends that Gibson did not act in an emergency situation because "stat"[2] calls routinely occur within hospitals. The evidence offered during the summary judgment motion does not support this assertion. Gibson declared that William was cyanotic and "in distress and in need of emergency care and treatment." Taft and Gibson stated at their depositions that the umbilical cord was wrapped around William's body and that he suffered from anoxia. Both physicians offered immediate care to him. Plaintiff offered no counterdeclarations that an emergency did not exist. Neither is it reasonably inferable from defendants' evidence that an emergency did not exist. There is therefore no triable issue of fact whether an emergency existed. (*Willard* v. *Hagemeister* (1981) 121 Cal.App.3d 406, 414 [175 Cal.Rptr. 365].)

Plaintiff, relying upon *Colby* v. *Schwartz, supra,* 78 Cal.App.3d 885, argues that the Good Samaritan laws do not protect a physician rendering emergency medical care both within his medical speciality and within a hospital. In addition, plaintiff presents the declaration of a pediatric neurologist stating that it is the "custom and practice" of pediatricians who are hospital staff members to treat newborns. ■ We conclude that whatever the custom may be in general, it is reasonably inferable from Gibson's declaration that *he* had no existing duty to treat William. Gibson is entitled therefore to the protection offered by the Good Samaritan laws although he provided hospital medical care within his speciality. (*McKenna* v. *Cedars of Lebanon Hospital, supra,* 93 Cal.App.3d 282, 286, 288.)

*Colby* v. *Schwartz, supra,* concerned the death of an auto accident victim during surgery performed by designated emergency call physicians. The

occurred prior to such declaration but after the commencement of such medical disaster. The immunity granted in this section shall not apply in the event of a willful act or omission."

Section 2396 states: "No licensee, who in good faith upon the request of another person so licensed, renders emergency medical care to a person for medical complication arising from prior care by another person so licensed, shall be liable for any civil damages as a result of any acts or omissions by such licensed person in rendering such emergency medical care."

[2]"Stat" is an abbreviation of the Latin word, "statim," meaning "immediately." Black's Law Dictionary (5th ed. 1979) West Publishing Co., page 1264. Webster's Third New International Dictionary (1965) published by G. & C. Merriam Co., page 2228.

court held that the doctors were not entitled to the protection of the Good Samaritan laws because their declarations revealed that the doctors operated upon the decedent "as part of their normal course of practice as members of the hospital emergency call panel." (*Id.*, at p. 891.) The court explained that ". . . the apparent legislative purpose underlying [sections 2395 and 2396] is to induce physicians to render medical aid to individuals who, though in need of such care, were not receiving it. . . . [¶] Physicians . . . who treat patients requiring immediate medical care as part of their normal course of practice do not need the added inducement that immunity from civil liability would provide." (*Id.*, at pp. 891-892.) In dictum, the court added: "[Sections 2395 and 2396] were directed towards physicians who, by chance and on an irregular basis, come upon or are called to render emergency medical care." (*Id.*, at p. 892.)

Gibson responds that he is shielded from liability under *McKenna* v. *Cedars of Lebanon Hospital, supra*, 93 Cal.App.3d 282. The physician-defendant in *McKenna*, while routinely examining another patient, responded to an emergency call summoning him to the room of a seizure patient. He treated the patient with Valium, but she suffered cardiac arrest, lapsed into a coma, and died 11 days later. The decedent's heirs sued the doctor for medical malpractice. At trial, the judge instructed the jury with an instruction based upon former Business and Professions Code section 2144, now section 2395. (Fn. 1, *ante*.) The reviewing court approved the instruction because the physician's response was outside the scope of his normal duties: "[The decedent] was another doctor's patient; there is no showing [defendant] had a legal duty to render emergency treatment arising from his contract of employment with Cedars." (*Id.*, p. 286.)

Moreover, the court did not find McKenna's position as chief resident physician at the hospital determinative. Such position did not, "as a matter of law, make [defendant] an ex-officio member of an emergency team, which might be expected to deal with emergencies as its normal function. . . ." (*Id.*, p. 288.)

Plaintiff argues that *McKenna* is inapposite because defendant was a chief resident without specialized expertise as compared to Gibson who was an active member of the pediatrics staff. Plaintiff contends that because Gibson was in the hospital when he was summoned for aid, he had a duty to treat plaintiff. Under such reasoning, the Good Samaritan laws would grant immunity only to physicians who, without specialized expertise, respond by chance to medical emergencies that occur outside the hospital such as a roadside injury.

■ Unlike other Good Samaritan statutes, sections 2395 and 2396 apply to emergencies both within and without a hospital. (Cf. Bus. & Prof. Code,

§§ 1627.5, 2727.5, 2861.5; Health & Saf. Code, § 1317.) For example, Health and Safety Code section 1317 immunizes hospital cardiopulmonary resuscitation team members from liability for death or injury to the patient. This section has been held to provide immunity to *hospital designated* team members as well as volunteer members. (*Lowry* v. *Henry Mayo Newhall Memorial Hospital* (1986) 185 Cal.App.3d 188, 192-193 [229 Cal.Rptr. 620].) Section 1627.5 restricts dental emergencies to those occurring outside the dentist's place of practice. Sections 2727.5 and 2861.5 provide immunity to nurses for emergency care given "outside both the place and the course of . . . employment."

In contrast, sections 2395 and 2396 declare no restriction concerning the site of an emergency. It is a desirable social objective to encourage prompt medical care to persons who might not otherwise receive it, regardless of the location of the emergency.

■ Neither do sections 2395 and 2396 limit immunity to only those physicians treating patients outside the physicians' specialties. Such a restriction would deny victims the benefit of knowledgeable and experienced care and would not promote the legislative purpose of inducing physicians to provide medical care to those in need. (*Colby* v. *Schwartz, supra,* 78 Cal.App.3d 885, 891.)

■ The heart of the application of the Good Samaritan statutes is the inquiry whether a duty of professional care pre-existed the emergency. (Comment, *Good Samaritans and Hospital Emergencies* (1981) 54 So.Cal.L.Rev. 417, 418.) Gibson's declaration provides a reasonable inference that he did not have an existing duty to treat William and that he acted as a volunteer. William was not Gibson's patient and Taft did not customarily refer patients to him. Gibson was present in the hospital only because he was treating his own hospitalized patients. He cancelled his office appointments for the day in order to treat William. That a medical emergency fortuitously occurred while he was in the hospital creates no duty to plaintiff. There was no evidence that Gibson was employed by the hospital, and it is not a reasonable inference that because he was an active staff member, the hospital had designated him to treat newborns in the event of an emergency.

Plaintiff's citations to the accreditation manual for hospitals and *Yeargin* v. *Hamilton Memorial Hospital* (1972) 229 Ga. 870 [195 S.E.2d 8], are not pertinent. The accreditation manual states that emergency room physicians should be members of the active staff; the portion cited does not impose a duty of emergency care upon staff physicians. *Yeargin* v. *Hamilton Memorial Hospital, supra,* held that a hospital rule requiring staff members to serve

as backup emergency room physicians was reasonable. *Yeargin* likewise did not impose a duty of emergency care upon staff physicians.

Gibson's declaration and the evidence produced at the motion also establishes that Gibson is immune from suit under section 2396. Gibson provided emergency care upon Taft's request to William "for a medical complication arising from prior care by another person so licensed. . . ." Taft treated William's mother throughout her pregnancy, monitored William with a fetal monitor and administered emergency care upon birth. Plaintiff, in his complaint, alleges that Taft was in part responsible for plaintiff's injuries. Gibson may rely upon this allegation to establish that William's "medical complication" arose from prior care. (*Brown* v. *City of Fremont* (1977) 75 Cal.App.3d 141, 146 [142 Cal.Rptr. 46].)

Accordingly, the judgment is affirmed.

Stone, P. J., and Abbe, J., concurred.