73859. CLAYTON et al. v. KELLY et al.
(357 SE2d 865)

BIRDSONG, Chief Judge.

The appellants, parents of a child who they allege was rendered severely retarded as a result of deprivation of sufficient oxygen at or after her birth, sued Coliseum Park Hospital and attending doctors. Summary judgment was granted to Gene M. Kelly, M.D., and Anesthesia Associates of Macon, apparently upon the basis of immunity provided by the Georgia "Good Samaritan" statute, OCGA § 51-1-29. The plaintiffs appeal. *Held*:

We reverse. Issues of fact remain as to the applicability of the immunity provisions of the Georgia Good Samaritan statute to these appellees.

The evidence adduced, which we shall state generally in favor of the respondents to defendant's motion for summary judgment for purposes of this decision only, indicates that the appellee Anesthesia Associates of Macon, of whom appellee Kelly is a partner, were the only anesthesiologists who provided anesthesia service at the hospital, as such making up the Anesthesia Department and being subject to the rules, regulations, by-laws, and policies of the hospital, which include the requirement that the Anesthesia Department provide anesthesia coverage for emergency procedures 24 hours a day and be available at any time, in related areas of care, including patient inhalation therapy or cardiopulmonary resuscitation. Dr. Kelly concedes he had a doctor-patient relationship with the plaintiff mother, but denies any such relationship with the newborn child. At 6:00 p.m.

on the day of birth, he checked on his group's patients, including the plaintiff Mrs. Clayton. He helped place her on the delivery table and concerned himself with whether the analgesia was adequate for the plaintiff mother. At the time of delivery he realized the baby was in trouble, and he and the treating obstetrician/gynecologist began to resuscitate her. The conduct of these activities is the alleged cause of the child's present condition, but is not a matter of dispute in this appeal.

The sole question is whether Dr. Kelly and his group are entitled to immunity under OCGA § 51-1-29, on the basis they assert, which is that they rendered emergency care which was not a normal part or function of their service at the hospital, and that they had no physician/patient relation to the baby.

The code section in force at the time this cause of action arose provides: "Any person, including any person licensed to practice medicine and surgery pursuant to Article 2 of Chapter 34 of Title 43 and including any person licensed to render services ancillary thereto, *who in good faith renders emergency care at the scene of an accident or emergency to the victim or victims thereof without making any charge therefor* shall not be liable for any civil damages as a result of any act or omission by such person in rendering emergency care or as a result of any act or failure to act to provide or arrange for further medical treatment or care for the injured person." (Emphasis supplied.)

The appellees contend that because they made no monetary charge for any service rendered to the child, they are per se entitled to the immunity granted by the statute. However, without meaning to imply any negative view, or indeed any view, of the facts in this case, we think it is too plain to debate that this immunity, granted in derogation of common law, was not meant to be conditioned upon the sagacity of a particular physician in not making a monetary charge, after the fact, for a service which, for whatever reason, was not followed by the happy recovery of the patient. To hold otherwise would sanction a construction not possibly intended by the legislature. The expectation of payment is not to be regarded as superficially controlling in a case; it refers mainly to situations distinguishing the true wayside volunteer. If the facts show a duty to respond by virtue of a person's particular employment, his state of mind as to payment will not thwart that duty. Whatever the specific provisions of a particular good Samaritan statute, certain basic policy considerations are immutable. At common law, although there might have been no duty to render aid to a distressed person, if one undertook to give such aid he assumed the duty to exercise ordinary care; and of course in the case of physicians, he assumed a particular and higher duty. *Wallace v. Hall*, 145 Ga. App. 610, 611 (244 SE2d 129). This state of affairs could

not possibly offer encouragement to anyone to volunteer to help another, but worse, it virtually forbade physicians to offer their superior skill. As Prosser said: "[T]he result of all this is that the good Samaritan who tries to help may find himself mulcted in damages, while the priest and the Levite who pass by on the other side go on their cheerful way rejoicing." Prosser, Law of Torts, § 56 at 344 (4th ed. 1971). *Lee v. Alas. & Johnson*, 490 P2d 1206, 1208-1209. The basic premise of these immunity statutes is "to induce voluntary rescue by removing the fear of potential liability which acts as an impediment to such rescue. Thus they are directed at persons who are not under some pre-existing duty to rescue." *Lee v. State of Alas.*, supra.

If the doctor had a particular employment duty to aid the patient at the hospital or had a pre-existing doctor-patient relationship to the patient he aided, then he had a duty to the patient to begin with; and in such a case he does not need a special inducement to offer aid, the aid he offers is not "voluntary" in the sense of a Good Samaritan, and public policy would be ill-served if he were relieved of the usual physician's duty of care and given immunity in such a case. *Colby v. Schwartz*, 144 Cal. Rptr. 624, 628.

Good Samaritan statutes are directed at persons, including physicians, who *by chance and on an irregular basis* come upon or are called upon to render emergency care. Id. p. 628. The fact that a physician is skilled in the subject matter in question or that the exigency lies within his expertise, does not create a duty where none existed before; in fact such persons are particularly encouraged by the statute to volunteer their aid. Id.; *Burciaga v. St. John's Hosp.*, 232 Cal. Rptr. 75, 78. Neither is he deprived of immunity by the fact alone that he works at the hospital, or is present at the hospital, or is called to the hospital when the emergency arises. Id. If there was no prior duty to respond and there was no prior doctor-patient relationship, one is not created by the event of the emergency. *Higgins v. Detroit Osteopathic Hosp.*, 398 NW2d 520. But clearly the occurrence of an "emergency" will not invoke the immunity, if it was the doctor's duty to respond to the emergency. *Colby*, supra.

It should be obvious from the bare statement of these principles underlying the good Samaritan statute, that questions of fact exist which are not yet disposed of by the voluminous record in this case. Did the appellees' duties of employment or association at the hospital (particularly the requirement of the hospital rules, regulations and by-laws that they provide anesthesia coverage for emergency procedures 24 hours a day and be available at any time for consultation in related areas of care, including patient inhalation therapy or cardiopulmonary resuscitation), expressly or customarily require their assistance in the resuscitation of a new-born infant? The question is answered by Dr. Kelly's allusion in his deposition to some usual or

48

general responsibility to "have taken charge of whatever suctioning that was done at that time, in preparation for ventilating the child and later on intubating it"; was the condition of this child upon her arrival, whether emergency or not, within this realm? If it was, Dr. Kelly owed a duty to assist in this case and he was not a "volunteer" entitled to immunity under OCGA § 51-1-29.

The fact that he was employed at the hospital, that he was aiding the mother, and had a doctor-patient relationship with her, or that he was in the room, does not require him to respond as a matter of law nor place upon him a duty to aid the child, for this would be to deny that immunity to physicians who, though nearby or at hand, do not have such a duty to begin with but might by chance be called upon or moved to assist, and might discourage any offer to help by the one most skilled in the certain specialty. But at the same time, the Good Samaritan statute immunity is intended to facilitate good medical care by professionals as well as the assistance of wayside travelers; therefore, it is not available to insulate from liability for failure to exercise their duty of care those persons whose express or customary employment duties require them to administer aid. The fact that such factual questions may be hard to answer, does not make it a case to be decided as a matter of law, and does not make it less a jury matter, but rather more.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED MAY 22, 1987.

*Ronald T. Knight, Thomas W. Bennett*, for appellants.
*Joseph H. Chambless, Mallory C. Atkinson, Jr., Thomas C. James III, Jerome H. Strickland*, for appellees.