**Roy E. JAMES, Jr., Plaintiff,**

v.

**Charles ROWE and Marjorie Rowe, d/b/a Linn County Ambulance Service, Inc., and Dean T. Gettler, M.D., Defendants.**

**Civ. A. No. 87–2297–S.**

United States District Court,
D. Kansas.

Nov. 25, 1987.

Thomas R. Hill, Mark Beam–Ward, Couch & Pierce, Chartered, Overland Park, Kan., for plaintiff.

Paul Hasty, Jr., Wallace, Saunders, Austin, Brown and Enochs, Chartered, Overland Park, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants Charles Rowe and Marjorie Rowe, d/b/a Linn County Ambulance Service, Inc.'s motion to dismiss for failure to state a claim upon which relief may be granted. This case arises out of an accident that occurred at Tanglewood Lake on March 30, 1986. The plaintiff suffered a head injury, and defendants were called to the scene of the accident to provide emergency care and to transport him to a hospital capable of treating his injuries. Plaintiff claims defendants were negligent in treating him at the scene and in failing to transport him immediately to a facility capable of treating his injuries. Defendants now argue that the Kansas Good Samaritan Law, K.S.A. 65–2891 *et seq.* exempts them from all liability for ordinary negligence.

The Kansas Good Samaritan Law, K.S.A. 65–2891 *et seq.* was passed in 1965, and has been amended several times since. It provides that:

(a) Any health care provider who in good faith renders emergency care or assistance at the scene of an emergency or accident ... shall not be liable for any civil damages for acts or omissions other than damages occasioned by gross negli-

gence or by willful or wanton acts or omissions by such person in rendering such emergency care.

To the casual reader, it might appear from the plain language of the statute that this statute abrogates defendants' liability in this case. Generally, when construing a statute a court must give words their ordinary meaning and construe the language in the context of the statute. *Jackson v. City of Kansas City*, 235 Kan. 278, 319, 680 P.2d 877, 909 (1984). However, we reject the notion that the Kansas Legislature intended to extinguish the law of common law negligence for all health care which might be given in an emergency. Such would be a far-sweeping move which would have consequences not only for ambulance services but for doctors, nurses, insurance carriers, and indeed the entire medical profession. We do not believe that other health care legislation or the legislative history of K.S.A. 65–2891 bears out defendants' misguided conclusion. In interpreting legislative acts, a court must give a statute that construction which is consistent with the intent and purpose of the statute, even if that construction is not within the literal meaning of the statute. *Jackson*, 235 Kan. at 318, 680 P.2d at 909.

Plaintiff directs the court to two additional statutes that apply to ambulance attendants. K.S.A. 65–4307(b) abrogates the ambulance attendant's ordinary negligence when he or she is acting at the instruction of a doctor or nurse. K.S.A. 65–4337 exempts the ambulance attendant from liability for ordinary negligence when performing manual cardiac defibrillation. K.S.A. 4307(b) was passed in 1974, and K.S.A. 65–4337 was passed in 1985. If the Kansas Legislature intended the Good Samaritan Law to abrogate all ordinary negligence of the ambulance attendant acting in an emergency, then K.S.A. 65–4307(b) and 65–4337 would have been unnecessary and duplicative. There would have been no need to pass the additional statutes specifying certain instances when an ambulance attendant is exempt from liability, because the attendant would already be exempt in *all* emergency situations under K.S.A. 65–2891.

Certainly, then, the Kansas Legislature must have meant something else when it passed the Good Samaritan Law. Although we have no legislative history from the statute's original passage,[1] records surrounding the passage of amendments since 1965 reveal the Legislature's true purpose behind the Good Samaritan Law.

In 1976, the Legislature added several professions to the list of health care providers covered by the statute, including pharmacists, optometrists, and mobile intensive care technicians. In its support of the bill, the Kansas Department of Health and Environment stated that the benefit of the amendment would be that it would "increase the chances of an accident victim receiving care." This comment indicates an underlying assumption that the bill sought to encourage anyone with medical training to assist a person in a medical emergency. There is certainly no indication that medical personnel in the ordinary course of their duties were refusing to treat patients in emergency situations for fear of later being sued. Such an assumption would border on absurdity. Instead, the Department of Health and Environment went on to state that the purpose of the bill was to reassure those "who now might not stop and help." Again, this language indicates a desire to encourage medically-trained personnel to "stop and help" anyone he or she might happen upon in an emergency situation.

This conclusion is in accord with the purpose behind the Good Samaritan laws now in effect in all fifty states. No Kansas court has before interpreted this state's law. However, those states which have interpreted similar laws have uniformly held that the law is not meant to exempt all medical personnel in every emergency situation, but only those personnel who happen

---

1. The Kansas Legislature did not begin keeping records of its committee meetings and other relevant legislative history until 1971.

across an emergency outside the normal course of their work and who otherwise have no duty to assist.[2] *See, e.g., Lee v. State*, 490 P.2d 1206, 1209 (Alaska 1971), *overruled on other grounds*, 545 P.2d 165 (Alaska 1976), (statute applies to those persons who otherwise have no duty to rescue); *Colby v. Schwartz*, 78 Cal.App.3d 885, 144 Cal.Rptr. 624, 628 (1978) (good samaritan law does not excuse physician rendering emergency care in the ordinary course of practice); *Lindsey v. Miami*, 689 S.W.2d 856, 860 (Tenn.1985) (statute did not abrogate liability of person who otherwise had duty to render aid.)

■ Finally, the court finds no merit in defendants' argument that the 1987 Kansas Legislature's passage of the Certified First Responder Act, ch. 230, 1987 Kan. Sess.Laws 1305, supports their argument. They assert that by passing that Act, the Legislature meant to reinforce the fact that all health care providers' negligence is abrogated in an emergency situation. The court disagrees. The simple purpose of the Certified First Responder Act was to create a new branch of medical care, by providing certification for firefighters, police officers, and others trained in first aid who are usually the first to arrive on the scene of an accident. The Legislature did not intend to "reinforce" the abrogation of negligence in all emergency situations because that was not the original intent behind the Good Samaritan Law. The court rejects defendants' argument, and their motion will be denied.

IT IS BY THE COURT THEREFORE ORDERED that defendants Charles Rowe and Marjorie Rowe, d/b/a Linn County Ambulance Service, Inc.'s motion to dismiss for failure to state a claim is denied.

---

2. Even the statute's popular name indicates that the scope of its coverage is limited to those who happen upon an emergency and otherwise have no duty to act. The parable of the Good Samaritan told the story of the man who, during a journey, came upon a victim of a robbery. He treated the man's wounds, then transported him to an inn where he could be cared for. *Luke* 10: 30–37.