[No. G009752. Fourth Dist., Div. Three. Nov. 1, 1990.]

WALTER DEAN STREET et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
NORMAN F. CHANG, Real Party in Interest.

1398

COUNSEL

Mazursky, Schwartz & Angelo, Christopher E. Angelo, David Hoffman and Philip S. Cifarelli for Petitioners.

No appearance for Respondent.

Baker, Silberberg & Keener and Marshall Silberberg for Real Party in Interest.

OPINION

DICKEY, J.*—Petitioners Walter Dean Street and Eric Street, surviving husband and son of decedent Marlene Street, filed a wrongful death action against Norman F. Chang, M.D., and others. The superior court granted Chang's motion for summary adjudication of issues, concluding the "Good Samaritan" statutes shield Chang from any liability to plaintiffs, even if the emergency medical care he rendered to decedent was grossly negligent. We grant the petition for a peremptory writ of mandate.

FACTS

Marlene Street went to the Brea X-Ray Medical Group (the Group) on October 22, 1986, for what should have been a routine intravenous pyelogram. William Danko, M.D., a radiologist employed by the Group to perform diagnostic radiological services, injected Street with the contrast dye necessary for the test. The 35-year-old patient developed an almost immediate and severe allergic reaction to the dye. Street was unable to breathe and was in need of oxygen.

Chang and his brother had operated the Group as partners and coowners since 1979. Chang was treating a patient in another room when Danko called for assistance. He rushed to the radiology room and instructed his staff to summon paramedics.

On the date of Street's emergency, Chang had a general family practice. He had no radiology training. He had never undertaken a hospital-affiliated residency program and was not eligible for board certification in any specialty. Chang had not been trained in advanced cardiac life support and had never previously treated a patient suffering anaphylactic shock.

---

*Assigned by the Chairperson of the Judicial Council.

The evidence is in dispute concerning whether Chang's office had a crash cart or other equipment necessary to handle this type of emergency. Chang's chart notes are in conflict with hospital records and the deposition testimony of the paramedics. The paramedics described Street as unconscious, vomiting, bluish in color, and unresponsive when they arrived. Chang rebuffed their request to take control of her care and would not allow them to open an airway, i.e., intubate the patient, or administer oxygen. His terse orders were, " 'I will control the patient,' " and "[I] 'just want you to transport [her] to the hospital across the street.' "

According to the paramedics, Street was deprived of oxygen for at least eight to ten minutes, the period of time they were with her in Chang's clinic and while she was taken to Brea Community Hospital. Oxygen was administered once Street arrived at the emergency room. But the oxygen deprivation led to a grand mal seizure, and she died within hours.

Street's husband and son sued the Group, Chang, and Danko for her wrongful death, alleging several theories of liability, including negligence in her medical treatment. Chang filed a motion for summary adjudication of a single issue. Relying on the Good Samaritan statutes,[1] he claimed he was immune from liability for negligence and entitled to judgment as a matter of law on that cause of action of plaintiffs' complaint.[2]

Chang's motion was supported by his declaration: "(1) I am a physician who is licensed to practice medicine in the State of California. I maintain a practice in the speciality of family practice which is located in Brea, California. [¶] (2) On October 22, 1986, I was examining a patient in my office when I was summoned to the scene of Ms. Street's emergency. At that time, she was undergoing diagnostic tests being performed by Dr. Danko, a radiologist. I immediately dropped what I was doing and voluntarily rushed to her aid. [¶] (3) When I arrived at the scene, I found that Ms. Street had gone into distress, with shortness of breath and bronchospasm, and the

---

[1] Business and Professions Code section 2395 provides in part, "No licensee, who in good faith renders emergency care at the scene of an emergency, shall be liable for any civil damages as a result of any acts or omissions by such person in rendering the emergency care." Section 2396 adds, "No licensee, who in good faith upon the request of another person so licensed, renders emergency medical care to a person for medical complication arising from prior care by another person so licensed, shall be liable for any civil damages as a result of any acts or omissions by such licensed person in rendering such emergency medical care."

Per Business and Professions Code section 2041, a "licensee" includes a physician.

[2] The motion was narrowly drawn and applied only to Chang's personal negligence arising out of his efforts to treat decedent's anaphylactic shock. Defendant did not seek to be relieved of any liability as owner of the clinic.

situation was, indeed, an emergency. I rendered emergency care to the best of my ability until the patient was transferred to the emergency room of Brea Community Hospital. I feel that at all times my care and treatment of Ms. Street complied with the standard of practice in the community for physicians of my background and training, and I was not negligent. [¶] (4) Prior to receiving Dr. Danko's urgent request for assistance, I had never been acquainted with Ms. Marlene Street. I had never contracted to render medical services to her, and I had never in fact treated her. I responded to her emergency only because I was a physician who happened to be in the suite at the time the emergency arose. My services were strictly voluntary. [¶] (5) On October 22, 1986, I was not under any preexisting duty to render medical care to Marlene Street. My only involvement with Ms. Street was that of a Good Samaritan."

Plaintiffs countered with a declaration by their medical expert who concluded Street died as a result of Chang's gross negligence. The standard of care of competent physicians in the community in dealing with an anaphylactic reaction requires that the patient be intubated for oxygen and suctioned. The failure to deliver oxygen for a period of eight to ten minutes, particularly when paramedics were present with the appropriate equipment, constituted a gross departure from the standard of care, as did Chang's refusal to permit the paramedics to treat the patient in his clinic. The absence of a formal plan of action to deal with emergency situations in his offices was indefensible in the view of plaintiffs' expert.

Plaintiffs argued Chang was not a volunteer within the meaning of the statutes because he was the owner of the medical facility where she was being treated. They made evidentiary objections to Chang's declaration and also questioned its adequacy to establish his good faith, a threshold requirement for applicability of the Good Samaritan statutes.

The court determined a triable issue existed as to whether Chang was grossly negligent in his treatment of Street. However, the judge concluded the point was immaterial because the Good Samaritan statutes under review in this case, unlike some other statutory immunity provisions, shield a tortfeasor from liability even for gross negligence. The court had located no authority to support the notion that "gross negligence or recklessness could constitute a lack of good faith." Such a ruling, added the court, would unduly limit the immunities provided by Business and Professions Code sections 2395 and 2396 and would vitiate "'the strong public policy to encourage emergency assistance and rescue.'" The court concluded, "plaintiffs [] are not entitled to recover damages from defendant, Norman Chang, M.D., for Dr. Chang's alleged medical negligence in the emergency treatment rendered by him to plaintiffs' decedent."

## DISCUSSION

■  We begin by disabusing both parties of the notion that a motion for summary judgment or summary adjudication of issues involves any form of discretion. Discretion plays no role in determining whether a party is entitled to judgment as a matter of law. If the trial court errs in ruling on either motion, the error is one of law. It is procedurally and legally incorrect to claim a court has abused its discretion under those circumstances. That said, we turn to the merits of the petition.

■  Good Samaritan statutes of the type at issue here have been enacted in virtually every state since California initiated the concept in 1959. Their purpose is to eliminate the perceived inadequacies of the common law, under which a volunteer, choosing to assist an injured person, although having no duty to do so, could be held liable for negligence in providing such assistance. (*Colby* v. *Schwartz* (1978) 78 Cal.App.3d 885, 889-890 [144 Cal.Rptr. 624].)[3] In *Colby*, the court analyzed the two predecessor provisions (former Bus. & Prof. Code, §§ 2144, 2144.5) and concluded the purpose of both was to induce physicians to render emergency aid to individuals who would not otherwise receive it. The court stressed the law was directed toward physicians who *"by chance and on an irregular basis, come upon or are called to render emergency medical care."* (*Id.*, at p. 892, italics added.)  ■ ■■■  A year later, another appellate panel characterized the physician who would be entitled to the Good Samaritan immunities as "truly a *volunteer*." (*McKenna* v. *Cedars of Lebanon Hospital* (1979) 93 Cal.App.3d 282, 288 [155 Cal.Rptr. 631].)[4]

Chang has cited a number of California cases where the courts have permitted physicians to invoke the statutory immunities in question while rendering emergency medical treatment inside hospitals. (*Kearns* v. *Superior Court* (1988) 204 Cal.App.3d 1325 [252 Cal.Rptr. 4]; *Burciaga* v. *St. John's Hospital* (1986) 187 Cal.App.3d 710 [232 Cal.Rptr. 75]; *McKenna* v. *Cedars of Lebanon Hospital, supra,* 93 Cal.App.3d 282 [155 Cal.Rptr. 631].) However, the common denominator in those cases was that the immunized physician had no preexisting duty to, or responsibility for, the patient who received emergency medical assistance. Those cases also stand for the

---

[3] As Prosser put it, "The result of all this is that the good Samaritan who tries to help may find himself mulcted in damages, while the priest and the Levite who pass by on the other side go on their cheerful way rejoicing." (Prosser & Keeton, The Law of Torts (5th ed. 1984) § 56, p. 378.)

[4] A "volunteer" is "one *who enters into or offers himself for a service of his own free will*" or "one who renders a service or takes part in a transaction while having no legal concern or interest." (Webster's Third Internat. Dict. (1981) p. 2564). Obviously, the question of whether one is a volunteer presents an issue of motivation and state of mind, both of which are questions of fact.

proposition that a physician does not lose "volunteer" status—and the right to claim the immunity simply because he or she has special expertise in emergency procedures or a high-level position in the administrative structure of the hospital.

But none of the cases Chang cites has involved a physician who is the owner of a medical facility and who renders emergency aid to a scheduled patient. Although our research has not disclosed any reported California decision on point, we are persuaded by the reasoning in a recent Georgia court of appeals' decision.

In *Clayton* v. *Kelly* (1987) 183 Ga.App. 45 [357 S.E.2d 865], the defendant anesthesiologist was a partner in a group that provided all the anesthesiology services for a particular hospital. Under the hospital bylaws and policies, the group was expected to provide around-the-clock anesthesia services for emergencies. The defendant assisted an obstetrician with emergency efforts to resuscitate a newborn baby. The infant allegedly suffered mental impairment as a result of the life-saving treatment, and the parents sued.

The anesthesiologist claimed immunity under the Georgia Good Samaritan statute (not materially different from the California law at issue here), arguing he had no prior contact with nor duty to the newborn infant. He did concede a physician-patient relationship with the mother.

The physician's motion for summary judgment was granted, but the court of appeals reversed. Citing *Colby* v. *Schwartz, supra,* 78 Cal.App.3d 885, the Georgia appellate panel concluded, "If the doctor had a particular employment duty to aid the patient at the hospital or had a pre-existing doctor-patient relationship to the patient he aided, then he had a duty to the patient to begin with; and in such a case he does not need a special inducement to offer aid, the aid he offers is not 'voluntary' in the sense of a Good Samaritan, and public policy would be ill-served if he were relieved of the usual physician's duty of care and given immunity in such a case." (*Id.,* at p. 47 [357 S.E.2d at p. 868.)

■ Similarly, we believe that the superior court here should have recognized that the Good Samaritan statutes are inapplicable to Chang under the circumstances. Street was a patient scheduled for diagnostic tests in Chang's own clinic. Although he was neither qualified to perform the test nor directly responsible for her treatment, he had a professional and ethical, not to mention a pecuniary, interest in her care. He was not a "volunteer" within the meaning of the Good Samaritan statutes.

The petition was properly served on the parties and requested issuance of a peremptory writ in the first instance. We have considered the response of real party in interest, and no further proceedings would aid in our resolution of the issue presented. Accordingly, it is appropriate to grant the requested relief without a hearing. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directing the Orange County Superior Court to vacate its order granting summary adjudication and to enter a new and different order denying that motion. Our previously ordered stay is dissolved effective upon return of the remittitur.

Sonenshine, Acting P. J., and Crosby, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied January 17, 1991. Panelli, J., was of the opinion that the petition should be granted.