No. 2--00--1092

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE COUNTY OF LAKE, ) Appeal from the Circuit Court

) of Lake County.

Plaintiff-Appellant, ) 

)

v. ) No. 00--OV--3360

    )

THE BOARD OF EDUCATION OF LAKE  )

BLUFF SCHOOL DISTRICT No. 65,   )

Lake County,  ) 

  )

Defendant-Appellee  )

  )  

(The Regional Superintendent of ) 

Schools of Lake County,  ) Honorable 

Intervenor and Defendant- ) Michael J. Fritz,

Appellee).  ) Judge, Presiding.    

_________________________________________________________________

JUSTICE CALLUM delivered the opinion of the court:

Plaintiff, the County of Lake (the County), sued defendant, the Board of Education of Lake Bluff School District No. 65, Lake County (the Board).  The County alleged that, as to one of the Board's properties, the Board had violated the Lake County Building Code.  The regional superintendent of schools of Lake County (the Superintendent) intervened as a defendant.  Defendants moved for summary judgment (735 ILCS 5/2--1005 (West 2000)).  They argued that the Board's use of the property subjected it to the Illinois Health/Life Safety Code for Public Schools (the Safety Code) (23 Ill. Adm. Code §180.10 
et seq.
 (2000)) rather than the Lake County Building Code (the Building Code).  The County cross-moved for summary judgment, making the opposite argument.  In relevant part, the trial court granted defendants' motion.  The County appeals, and we affirm.

The material facts are undisputed.  Throughout the relevant period, the Board owned a building known as the West School.  Until June 1993, the West School housed an elementary school.  In July 1993, the Board leased portions of the building to two tenants: the Lake Bluff Park District (the Park District) and the Lake Bluff Village Children's Center (the Center).  The Park District conducted recreational programs.  The Center provided daycare for preschoolers, but it also conducted a program for students in the Board's district.  Before and after school, the program provided activities for students in kindergarten through fifth grade.

The Board did not dictate the activities of the before- and after-school program.  However, to support the program, the Board provided some equipment and gave the students free transportation between the Center and their schools.  Furthermore, the Board charged the Center no rent; the Center merely paid utilities and made a contribution to the Board's "capital outlay fund" for the maintenance of the building.  The program was available throughout the calendar year, though it was not as well attended in the summer as it was during the school year.

In June 1999, the Park District vacated the West School.  At roughly the same time, Lakeview Community Church began renting the building's gymnasium for its Sunday services.  In July 1999, the Board passed a resolution declaring that the West School was "presently unnecessary, unsuitable or inconvenient for a school or the uses of the District."  In November 1999, because of dwindling enrollment in its programs, the Center vacated the West School.

In December 1999, after obtaining a permit from the Superintendent, the Board commenced a renovation of the West School.  About the same time, Tiny Town, Inc., a private day-care provider, inquired about renting the building.  The Board asked whether Tiny Town could conduct a before- and after-school program similar to the Center's, and Tiny Town said that it could.  In April 2000, after the renovation was complete, Tiny Town began occupying a portion of the building and commenced its regular business, providing daycare for children ranging in age from six weeks to six years.  Shields Township rented the remainder of the building and used it to house its administrative offices.  The Superintendent had permitted both tenants to occupy the West School.

On April 25, 2000, the Board passed a resolution that stated as follows:

"Pursuant to Section 10--22.18b of the Illinois School Code (105 ILCS 5/10--22.18b [(West 2000)]), the Board hereby establishes a before and after school program for students in kindergarten through fifth grade only at *** West School."

In June 2000, Tiny Town made available a before- and after-school program; however, the program would not begin in earnest until the fall.  The Board would provide transportation.  Tiny Town would be authorized to hire, pay, and fire the program's teachers, and Tiny Town would collect fees from the program's students.  The program would be coordinated with the school district's curriculum, and only the district's students would be eligible to participate.

Although various tenants occupied the West School after 1993, the Board continued to use the building for certain purposes.  First, the Board stored its property on 10% to 15% of the building's floor space.  Such property included chairs, desks, shelves, and tables, which were distributed to the district's schools when a need arose.  Second, roughly twice per month, the Board used the West School's gymnasium for school-sponsored activities, such as intramural sports.  For the most part, such events occurred in the West School's gym as often as they did in the other gyms in the district.

In May 2000, the County sued the Board, alleging as follows  in count I of its complaint.  The County had adopted as its Building Code the 1993 Building Officials and Code Administrators (BOCA) National Building Code.  Under that code, the Board was required to obtain a change-of-occupancy permit before allowing Tiny Town to operate its "child care facility."  Such a permit would not be issued until the West School was equipped with an  automatic sprinkler system, which the Building Code required in any building containing a "child care facility."  The County asked the court to fine the Board for violating the Building Code and to enjoin the occupancy of the West School until the Board obtained the necessary permit.

In count II, the County alleged that the Board's renovation of the West School constituted an "alteration" as defined by the Building Code.  Therefore, the Board was required to obtain another permit from the County.  The County sought the same relief that it sought in count I.  Count III is not relevant here.

The Superintendent intervened as a defendant.  In answering the County's complaint, defendants asserted that the West School was not governed by the Building Code; rather, it was subject to the Safety Code, as enforced by the Superintendent.  As a result, the Board did not need any permits from the County.

The parties cross-moved for summary judgment.  Defendants reiterated that, because the West School had been used continuously for school purposes, the Safety Code applied and the building was within the exclusive jurisdiction of the Superintendent.  The County insisted that the Building Code applied, adding that it was undisputed that the Board had violated it.

The trial court granted defendants summary judgment on counts I and II.  The County properly appealed under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).

Summary judgment is properly granted if the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there exists no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 2000); 
Zekman v. Direct American Marketers, Inc.
, 182 Ill. 2d 359, 374 (1998).  We review 
de novo
 a grant of summary judgment
.  
Zekman
, 182 Ill. 2d at 374.

In section 2--3.12 of the School Code (105 ILCS 5/2--3.12 (West 2000)), the legislature ordered the State Board of Education to create the Safety Code.  Now that it has been created, the Safety Code is: 

"the governing [building] code for all facilities that house public school students or are otherwise used for public school purposes, whether such facilities are permanent or temporary and whether they are owned, leased, rented, or otherwise used by the district.  Facilities owned by a school district but that are not used to house public school students or are not used for public school purposes shall be governed by separate provisions within the code authorized by this Section."  105 ILCS 5/2--3.12 (West 2000).

If a building is subject to the Safety Code, the Superintendent "shall receive applications and issue permits for the [building's] occupancy, *** substantial alteration, *** remodeling, renovation, *** or change in use."  23 Ill. Adm. Code §180.50 (2000).  If, however, a building is "owned by a school district but not used for public school purposes," the building is "subject to local building codes," as enforced by the locality.  23 Ill. Adm. Code §180.30 (2000).

As we noted, the material facts in this case are undisputed.  Thus, in light of those facts, we must simply determine whether the applicable code was the Safety Code or the Building Code.  That question requires us to determine whether, under section 2--3.12 of the School Code, the West School "house[d] public school students or [was] otherwise used for public school purposes."  If so, the Safety Code applied, to the exclusion of the Building Code, and defendants are entitled to judgment as a matter of law.

Initially, we address two preliminary issues.  First, defendants assert that we must defer to the Superintendent's determination that the Safety Code applied.  According to defendants, the applicability of the Safety Code is within the Superintendent's discretion, and his determination "should be subject to review only under an abuse of discretion standard."  We disagree.

Because the Superintendent has the power to enforce the Safety Code, his decisions under that code are generally entitled to great deference.  See 23 Ill. Adm. Code §180.50 (2000); 
LaBelle v. State Employees Retirement System of Illinois
, 265 Ill. App. 3d 733, 735 (1994).  However, in challenging the 
applicability
 of the Safety Code, the County questions whether the West School was within the Superintendent's jurisdiction.  The resolution of that question is a judicial function, and we need not defer to the Superintendent's determination.  See 
Geneva Community Unit School District No. 304 v. Property Tax Appeal Board
, 296 Ill. App. 3d 630, 633 (1998).

Next, the County submits that the Board made a binding admission that the Safety Code did not apply.  In July 1999, the Board resolved that the West School was "unnecessary, unsuitable or inconvenient for a school or the uses of the District."  The County concludes that, in passing that resolution, the Board forfeited its claim that the West School "house[d] public school students or [was] otherwise used for public school purposes" (105 ILCS 5/2--3.12 (West 2000)).

Defendants respond that the Board passed the resolution only because, under section 10--22.11(c) of the School Code (105 ILCS 5/10--22.11(c) (West 2000)), the resolution was a prerequisite to  any lease of the West School.  In any event, the resolution is not conclusive; because it was not made in the context of a judicial proceeding, it is subject to contradiction.  See 
Elliott v. Industrial Comm'n
, 303 Ill. App. 3d 185, 187 (1999).  Thus, if the facts establish that the West School "house[d] public school students or [was] otherwise used for public school purposes," the Safety Code applied despite the resolution.  See 105 ILCS 5/2--3.12 (West 2000).  We now address that central issue.

The West School was last used as an actual school in 1993.  Nevertheless, defendants contend that after 1993 the building  continued to be "used for public school purposes" (105 ILCS 5/2--3.12 (West 2000)).  First, except from December 1999 through March 2000, when the building was being renovated, the West School housed a "before and after school program" as authorized by section 10--22.18b of the School Code.  Second, the Board regularly used the building's gymnasium for school-sponsored events.  Third, the Board continuously stored its property in the building.

The County responds that the Board never operated a "before and after school program" as defined by section 10--22.18b.  The County further asserts that, because the Board's uses of the building's gym and storage space were "nominal," they were  insufficient to invoke the Safety Code.

Under these facts, whether the Board operated a "before and after school program" as defined by the School Code (105 ILCS 5/10--22.18b (West 2000)) is a novel and complex question.  However, we need not reach it.  We conclude that, due to the Board's remaining uses, the Safety Code applied to the West School.

Again, the parties do not dispute the facts.  Continuously from 1993, the Board held events in the gym roughly twice per month and stored property on 10% to 15% of the building's floor space.  The County concedes that, in a literal sense, the Board was using the West School.  The County claims, however, that the West School was not being "used for public school purposes" within the meaning of section 2--3.12 of the School Code.

Defendants rely on 
Mahrenholz v. County Board of School Trustees
, 188 Ill. App. 3d 260 (1989), and we find it instructive.  In that case, the Huttons conveyed land to a school district.  The deed stated that the land would revert to the grantors if it was not " 'used for school purpose.' "  
Mahrenholz
, 188 Ill. App. 3d at 261.  The district built a school on the land but ultimately used the building only to store "miscellaneous school equipment and supplies, primarily unused desks."  
Mahrenholz
, 188 Ill. App. 3d at 262.  The plaintiffs, who then possessed the Huttons' reversionary interest, sued to recover the land.

In construing the deed, the appellate court determined that the phrase " ' school purpose' " encompassed more than "the actual holding of classes."  
Mahrenholz
, 188 Ill. App. 3d at 262.  The issue then became whether the storage of school property was a "legitimate 'school purpose.' "  
Mahrenholz
, 188 Ill. App. 3d at 262.  The court held that the trial court did not err in finding the storage sufficient:

"School populations are not static.  They change from year to year, and in some instances, from month to month.  In order to accommodate such changes, storage facilities are necessary, not only to house surplus equipment and supplies when attendance is low to meet the needs when attendance is higher but also to replace worn out and damaged items.  Clearly, having such equipment and supplies on hand furthers the ultimate goal of educating students."  
Mahrenholz
, 188 Ill. App. 3d at 262-63.

We believe that a similar analysis is appropriate under section 2--3.12 of the School Code.  The storage of public school property is a public school purpose.  It follows naturally that the holding of public school functions is a public school purpose.  Because the Board used the West School for those purposes, the building was subject to the Safety Code.

The County replies that, in 
Mahrenholz
, the building was used 
solely
 to store school property.  Here, although the West School was used for public school purposes, those purposes were not the predominant uses of the building.  The County asserts that the legislature could not have intended the Safety Code to apply in such a case.  According to the County, we should interpret section 2--3.12 to mean that the Safety Code applies only to a building  used 
primarily
 for public school purposes.

In construing a statute, our chief objective is to effectuate the legislature's intent.  We look first to the statute's language; when it is clear, we must give it effect without further inquiry.  
Grams v. Autozone, Inc.
, 319 Ill. App. 3d 567, 569-70 (2001).  We may not depart from the plain language by reading into it exceptions, limitations, or conditions that the legislature did not express.  
Newland v. Budget Rent-A-Car Systems, Inc.
, 319 Ill. App. 3d 453, 456 (2001).  The construction of a statute is a question of law.  
Advincula v. United Blood Services
, 176 Ill. 2d 1, 12 (1996).

The language of section 2--3.12 is not at all ambiguous, and it is virtually unlimited.  As long as a building is "used for public school purposes," the Safety Code applies.  105 ILCS 5/2–3.12 (West 2000).  To say that it applies only to a building used 
primarily
 for public school purposes is obviously to read into the statute a limitation that is not expressed.  We are powerless to do so.  See 
Newland
, 319 Ill. App. 3d at 456.

The County acknowledges that it is asking us to embellish the plain language of section 2--3.12, but it asserts that such an embellishment is not without precedent.  In 
Northwest Suburban Fellowship, Inc. v. Department of Revenue
, 298 Ill. App. 3d 880 (1998), the court considered section 15--60 of the Property Tax Code, which states in part:

"All property belonging to any county or municipality used exclusively for the maintenance of the poor is exempt [from property taxes], as is all property owned by a taxing district that is being held for future expansion or development, 
except if leased by the taxing district to lessees for use for other than public purposes
."  (Emphasis added.)  35 ILCS 200/15--60 (West 2000).

Although the emphasized phrase speaks plainly of "use," the court determined that a leased property was exempt only if the lessee used it 
primarily
 for a public purpose.  See 
Northwest
, 298 Ill. App. 3d at 889-90 (and cases cited therein).

The County's reliance on 
Northwest
 is misplaced.  The principle that a property's primary use determines whether it is exempt from taxation has been settled law in Illinois for the better part of a century.  See 
First Congregational Church of De Kalb v. Board of Review
, 254 Ill. 220, 224 (1912).  It is a corollary of the rule, similarly well established, that statutes exempting property from taxation "must be strictly construed and resolved against the exemption if there is any doubt upon the subject."  
First Congregational Church
, 254 Ill. at 223.  Thus, the 
Northwest
 court simply interpreted section 15--60 in accordance with those principles, which apply uniquely to statutes of that kind.

No such principles govern our construction of section 2--3.12 of the School Code.  As a result, we must adhere to the conventional rules of statutory construction, taking the legislature at its plain word.  The Safety Code applied to the West School because it was "used for public school purposes."  105 ILCS 5/2--3.12 (West 2000).  That it was used primarily for other things is purely irrelevant.  

The County responds that, if we do not construe section 2--3.12 as it requests, we will effect an absurd result.  See 
Grams
, 319 Ill. App. 3d at 570 (a court may look beyond a statute's plain language when a literal interpretation leads to an absurdity).  According to the County, our construction would allow a private real estate developer to:

"circumvent a local building code and the associated permitting process by simply leasing 
one
 broom closet of a building to a public school district for the storage of 
one
 school desk.  It strains credulity to assume this would be consistent with the Legislature's intent."  (Emphasis in original.)

The County misinterprets our holding.  We are not suggesting that 
any
 storage, no matter how slight, constitutes a "public school purpose" under section 2--3.12.  In addressing the limits of its own holding, the 
Mahrenholz
 court stated:

"While [the school district claims that its] storage falls within the ambit of 'school purpose,' plaintiffs contend [that the district is] using the building for nothing more than a 'dumping ground,' a refuge for obsolete materials, while allowing the building to deteriorate.  If plaintiffs' claims were true, we would be compelled to agree [that the district's] use of the building would not constitute 'school purpose.' "  
Mahrenholz
, 188 Ill. App. 3d at 263.

Similarly, if the Board had used the West School to store only one desk, we would not conclude that the building had served a legally sufficient "public school purpose."  See 105 ILCS 5/2–3.12 (West 2000).  Instead, we would invoke the doctrine of 
de minimis non curat lex
, which means that the law does not regard trifles.  
Pacini v. Regopoulos
, 281 Ill. App. 3d 274, 279 (1996).  The storage of one desk is a purpose so trifling that it could not be given any meaning under the law.  This, however, is a different case.

Here, the Board stored property on 10% to 15% of the West School's floor space.  Although that storage was not the building's primary use, it was clearly more than a trifling use.  Furthermore, unlike in 
Mahrenholz
, no one claims that the stored property was obsolete or that the building was not maintained.  Indeed, the facts show otherwise.  Finally, although the West School featured school-sponsored events only about twice per month, that use also was more than nominal.  To invoke the Safety Code, section 2--3.12 required nothing more. 

In sum, the undisputed facts demonstrate that the West School "house[d] public school students or [was] otherwise used for public school purposes."  105 ILCS 5/2--3.12 (West 2000).  Therefore, the building was subject to the Safety Code, rather than the Building Code, and defendants are entitled to judgment as a matter of law. 

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

RAPP and BYRNE, JJ., concur.