NO. 4-01-0942 

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

CENTRAL ILLINOIS LIGHT COMPANY and FREEMAN UNITED COAL MINING COMPANY,

Plaintiffs-Appellants,

v.

THE ILLINOIS DEPARTMENT OF REVENUE,

Defendant-Appellee.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Sangamon County

No. 00MR832

Honorable

Thomas R. Appleton,

Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff Freeman United Coal Mining Company (Freeman), referred to collectively with Central Illinois Light Company (CILCO) as Taxpayers, appeals from an order of the circuit court of Sangamon County affirming on administrative review a decision of the Illinois Department of Revenue (Department).  The issues on review are whether (1) Freeman is entitled to a credit or refund on the basis that the coal sold by Freeman to CILCO was exempt under section 1a of the Illinois Retailers’ Occupation Tax Act (ROTA) (35 ILCS 120/1a (West 1994)), and (2) Freeman failed to prove that it would not receive a "windfall" if its claim was allowed.  We affirm.

The stipulated facts essentially indicate that from April 1, 1992, through December 31, 1994, Freeman paid retailers’ occupation tax on coal sold to CILCO in Illinois, but it claimed a credit under section 1a of ROTA for taxes paid on the coal used by CILCO to fuel its certified pollution-control facilities.  Correspondingly, from January 1, 1992, through December 31, 1994, CILCO paid taxes under the Use Tax Act (UTA) (35 ILCS 105/1 
et
 
seq
. (West 1994)) for coal purchased from out-of-state suppliers, claiming a credit under section 2a of UTA (35 ILCS 105/2a 
(West 1994)) for use taxes paid on coal purchased and used to fuel CILCO's certified pollution-control facilities.  Following an audit, the Department tentatively denied CILCO's claim on March 18, 1998, and Freeman's claim on April 9, 1998; and the Taxpayers filed written protests on May 12, 1998.  CILCO claimed a credit or refund of $23,984, and Freeman claimed a credit or refund of $170,983.

CILCO, an electrical power generating utility, operated two coal-fueled power plants identified as the E.D. Edwards Power Plant and the Duck Creek Power Plant.  To reduce or eliminate ash and sulfur-dioxide emissions into the air, the pollution-control systems of each power plant used electrostatic precipitators, and the Duck Creek Power Plant also employed a sulfur-dioxide scrubber.  The emissions were produced as a result of burning coal to generate electricity.  The electricity so generated was, in part, used to power the pollution-control systems.  CILCO calculated the amount of coal necessary to generate the electrical power needed to operate the pollution-control systems.

The CILCO and Freeman claims were consolidated before the Department.  Because the facts were stipulated, no evidentiary hearing was conducted at the administrative level.  On September 26, 2001, the administrative law judge (ALJ) recommended the claims be denied on the basis that the primary purpose of the coal was not pollution control.  The Department's Director issued a supplemental decision accepting the ALJ's reasoning and additionally found that Freeman failed to prove that a refund would not result in a windfall as required by section 6 of ROTA (35 ILCS 120/6 (West 2000)).  On November 22, 2000, the Department issued final determinations of the claims, denying each.

On December 13, 2000, Freeman filed a complaint for administrative review in the circuit court.  Because Freeman had not been given the opportunity to address the windfall issue in the administrative proceeding, the circuit court entered an agreed order to supplement the record with a copy of "AMENDMENT TO AND RESTATEMENT OF COAL SUPPLY AGREEMENT" between CILCO and Freeman.  On October 4, 2001, the circuit court affirmed the Department's denial of the Freeman's claim on the basis that the primary purpose of the coal was to create electricity and not pollution control.  The circuit court did not reach the issue of windfall.  On October 24, 2001, Freeman filed its notice of appeal.  

Because the issues involve the interpretation of statutes and the application of these interpreted statutes to undisputed facts, questions of law are presented that this court considers 
de
 
novo
.  
Panhandle Eastern Pipe Line Co. v. Environmental Protection Agency
, 314 Ill. App. 3d 296, 300, 734 N.E.2d 18, 21 (2000).

ROTA (35 ILCS 120/1 
et
 
seq
. (West 1994)) and UTA are complimentary statutes colloquially referred to as the "sales tax."  
Brown v. Zehnder
, 295 Ill. App. 3d 1031, 1034, 693 N.E.2d 1255, 1258 (1998).  
Brown
 discusses the relationship between the two acts (
Brown
, 295 Ill. App. 3d at 1034-35, 693 N.E.2d at 1258-59).  The basic purposes of UTA are to compliment ROTA by preventing evasion of taxes on interstate purchases and protecting Illinois retailers from competition advantages of out-of-state retailers not required to collect sales tax from Illinois purchasers.  
Illinois Road Equipment Co. v. Department of Revenue
, 32 Ill. 2d 576, 580, 207 N.E.2d 425, 427 (1965).  The relationship of the acts is not directly at issue in this case, and because CILCO did not appeal, we need not discuss UTA.

Section 1a of ROTA exempts from the retailers’ occupation tax the purchase, employment, and transfer of tangible personal property as "pollution control facilities" and defines that term as follows:

"'Pollution control facilities' means any system, method, construction, device or appliance appurtenant thereto sold or used or intended for the primary purpose of eliminating, preventing, or reducing air and water pollution as the term 'air pollution' or 'water pollution' is defined in the Environmental Protection Act', enacted by the 76th General Assembly, or for the primary purpose of treating, pretreating, modifying or disposing of any potential solid, liquid or gaseous pollutant which if released without such treatment, pretreatment, modification or disposal might be harmful, detrimental or offensive to human, plant or animal life, or to property."  35 ILCS 120/1a (West 1994).

Although courts give deference to an agency’s interpretation of a statute that the agency is charged with administering, an erroneous interpretation will be rejected.  
City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268
, 122 Ill. 2d 353, 361, 522 N.E.2d 1219, 1222 (1988); 
Moller v. Civil Service Comm'n of the City of Blue Island
, 326 Ill. App. 3d 660, 664, 761 N.E.2d 242, 245 (2001).  In statutory construction, courts apply the cardinal rule of ascertaining and giving effect to legislative intent by first looking to the statutory language, avoiding interpretations that render any part of the statute meaningless or void, and presuming that the legislature did not intend absurdity, inconvenience, or injustice.  
McNamee v. Federated Equipment & Supply Co.
, 181 Ill. 2d 415, 423-24, 692 N.E.2d 1157, 1161 (1998).  Courts will not depart from the statute's plain language by reading into it exceptions, limitations, or conditions that the legislature did not express.  
County of Lake v. Board of Education of Lake Bluff School District No. 65
, 325 Ill. App. 3d 694, 701, 761 N.E.2d 163, 169 (2001).  

Revenue laws are generally given reasonable construction,

but when there is uncertainty, taxing statutes are construed in favor of the taxpayer.  
TTX Co. v. Whitley
, 313 Ill. App. 3d 536, 543, 729 N.E.2d 844, 849 (2000).  On the other hand, exemptions to taxation are construed strictly in favor of the taxing body and against exemption, and any doubts about the application of an exemption are resolved in favor of taxation.  
County of Lake
, 325
 
Ill. App. 3d at 702, 761 N.E.2d at 170; 
Medcat Leasing Co. v. Whitley
, 253 Ill. App. 3d 801, 803, 625 N.E.2d 424, 426 (1993).

The legislature has recognized that fossil-fuel electric- generating plants are a significant source of air emissions requiring studies on their impact on public health.  415 ILCS 5/9.10(a)(1) (West 2000).  In this case, the question is whether to exempt from sales tax, under the pollution-control facilities exemption, the material which, when used as a fuel to generate electricity, caused the pollution.

Coal is a combustible material used as a fuel.  Webster's Third New International Dictionary 432 (1986) (hereinafter Webster's).  It is not itself a system, defined as a unity of parts or an assemblage to form a working unity or a set of materials or appliances used to carry out a method or design.  Webster's at 2322.  Nor is it a method, 
i.e.
, a technique or process (Webster's at 1422), for controlling pollution.  Nor is it a construction, device, or appliance (Webster's at 489 (construction), 618 (device), 104-05 (appliance)) that eliminates, prevents, or reduces air pollution.  Here, the coal is used to fuel the electric-generating plants, and the pollution-control systems employed by CILCO are powered by electricity.  Except for being the fuel creating the pollution, the coal is not directly implicated in the pollution-control process. 

Defendant Department compares the instant case to 
Beelman Truck Co. v. Cosentino
, 253 Ill. App. 3d 420, 624 N.E.2d 454 (1993).  
Beelman
 involved the use of escort trucks that carried plastic lines, gloves, 
et
 
cetera
, used to unload the waste and, in the event of an accident, the escort drivers work to contain the spill.  We find 
Beelman
 and 
Wesko Plating, Inc. v. Department of Revenue
, 222 Ill. App. 3d 422, 584 N.E.2d 162 (1991) (chemicals used to reduce or eliminate air or water pollution exempt from tax), inapposite.

Freeman also argues that the coal use here is similar to the use of limestone in 
Columbia Quarry Co. v. Department of Revenue
, 154 Ill. App. 3d 129, 130-32, 506 N.E.2d 795, 796-97 (1987).  However, in 
Columbia Quarry
, the limestone purchased was used exclusively as material in scrubber equipment to remove pollution, was part of a system and method used to reduce air pollution, and was found to be exempt from ROTA.  Here, the coal is not a component for conclusive pollution control.  The Department correctly determined that Freeman was not entitled to an exemption under section 1a of ROTA for the sale of coal to CILCO.

Freeman argues that the Department inappropriately relied on section 130.335 of its rules (86 Ill. Adm. Code §130.335 (Conway Greene CD-ROM June 2002)).  Section 130.335 provided that the ROTA exemption did not apply to the fuel used to operate the pollution-control equipment.  However, the ALJ made the determination to deny Freeman's claim "on grounds other than regulatory exclusions."  Because we interpret the statute as not exempting the sale of coal in this case, we decline to address Freeman's challenge to the viability of the Department's rule.

For the same reason, we decline to consider the issue of whether Freeman sufficiently proved it would not receive a windfall in the event of a credit or refund.

The judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

COOK and TURNER, JJ., concur.