LORRAINE NEAL, Special Representative and Special Adm'r of the Estate of Samantha Neal, Deceased, Plaintiff-Appellant, v. ALBERT C. YANG *et al.*, Defendants (Michelle Lee, Defendant-Appellee).

Second District    No. 2—03—0734

Opinion filed September 30, 2004.

Mark S. Komessar, of Komessar & Wintroub, of Chicago, for appellant.

Robert W. Smyth, Jr., Karen Kies DeGrand, and Jennifer Zlotow, all of Donohue, Brown, Mathewson & Smyth, of Chicago, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

Plaintiff, Lorraine Neal, filed this medical malpractice action for the injuries sustained by plaintiff's decedent, Samantha Neal, at the time of her birth. Plaintiff initially sued the attending obstetrician, Albert C. Yang, M.D.; the hospital, Provena Health, d/b/a St. Therese Medical Center; and nurse, Constance Fossler. Plaintiff subsequently amended the complaint to add pediatrician Manoochehr Sharifi, M.D., and defendant Michelle Lee, M.D., who answered an urgent call for help in resuscitating the unresponsive newborn. The trial court granted defendant summary judgment on the theory that her conduct was immunized under section 25 of the Good Samaritan Act (Act) (745 ILCS 49/25 (West 1996)). The remaining defendants were dismissed from the action and are not parties to this appeal. Plaintiff appeals, arguing that the trial court erred in granting summary judgment. She contends that defendant was the on-call physician obligated by contract to provide medical care to Samantha and that, in order to

obtain immunity under the Act, defendant was required to prove the absence of a preexisting duty to render care. For the reasons that follow, we hold that, under the plain language of section 25 of the Act, there is no requirement that a physician prove the absence of a preexisting duty to render care to a patient; rather, the physician's preexisting duty to render care is relevant only to how much notice the physician had of the illness. Because plaintiff concedes that defendant satisfied the requisite elements under section 25, we affirm the judgment.

## FACTS

The following facts are undisputed. On November 1, 1996, plaintiff went to St. Therese Medical Center for delivery of her first child, Samantha. She did not have a private obstetrician for purposes of delivery. All physicians with staff privileges at St. Therese were required to be on call and available to treat patients who were admitted to St. Therese and did not have their own doctors. Albert Yang was the on-call obstetrician on November 1, 1996, and was required to deliver Samantha.

On the date of the occurrence, defendant was an employee of St. Therese Anesthesiology Associates, which had entered into a contract with St. Therese Medical Center for exclusive privileges to provide anesthesia services to the hospital's patients. Pursuant to the contract, St. Therese Anesthesiology Associates agreed to provide board-certified or certification-eligible anesthesiologists on a 24-hour, 7-day-per-week basis, "to render all services and perform all anesthesia duties customarily performed by anesthesiologists ***, so as to effectively serve the needs of the patients and professional staff of the hospital." The contract required one anesthesiologist to be in the hospital at all times, another to be on call at all times, and at least one to be physically present in the hospital on weekdays to cover surgeries.

On November 1, 1996, defendant finished her elective surgical cases at 3:30 p.m. and went home. She was called back to the hospital to provide anesthesia service for a patient in labor and was administering an epidural anesthesia to the patient at the time Dr. Yang and members of the hospital staff were in a nearby labor and delivery room attempting a forceps delivery of Samantha. Defendant was not aware of Samantha's delivery or of the ensuing complications.

During plaintiff's labor, a fetal monitoring device indicated that Samantha's heart was in fetal distress. Dr. Yang repeatedly used forceps in an effort to deliver Samantha. When he was unsuccessful with the multiple forceps applications, he applied a vacuum suction device to facilitate the delivery. Despite the possibility that plaintiff

would deliver a depressed infant and despite unsuccessful attempts at a forceps delivery, Dr. Yang did not alert the on-call pediatrician, Dr. Manoochehr Sharifi, in time for him to be present to treat the newborn immediately after birth. When Dr. Sharifi was first paged, he was not on the premises and had to travel to the hospital. Samantha was born without a heart rate or respiration.

Because Dr. Sharifi was not immediately available when Samantha was born, Dr. Yang requested that defendant assist in Samantha's neonatal resuscitation (NNR). St. Therese obstetrical nurses, including Connie Fossler, testified that defendant, as the anesthesiologist on call and in the hospital, was paged as part of the NNR team to respond to Samantha's resuscitation. Defendant had no prior information concerning Samantha's delivery. She was not told why she was paged. Defendant had no doctor-patient relationship and no prior contact with plaintiff before she assisted with the NNR.

When defendant entered plaintiff's delivery room, she saw that a full NNR was already in progress with nurses and other medical care professionals providing bag and mask ventilation as well as chest compressions for Samantha. Defendant participated in the remainder of the resuscitation. Defendant was the only physician involved in the NNR and, as such, was in charge. Twenty-two minutes after Samantha's birth, cardiac activity was achieved. After Samantha was stabilized, she was airlifted to Lutheran General Hospital and admitted to its neonatal intensive care unit. As a result of oxygen deprivation, Samantha suffered, *inter alia*, cerebral anoxia, permanent spastic quadriparesis, hypoxic damage, and seizure disorder. Because she required 24-hour care due to all the injuries she suffered, upon her discharge Samantha resided in various children's nursing homes until her death in November 2000.

Plaintiff filed a complaint alleging that Dr. Yang, St. Therese, and Nurse Fossler were negligent in the delivery of the baby and, *inter alia*, for failing to timely assemble a skilled NNR team. Plaintiff amended her complaint and added Dr. Sharifi and defendant. Plaintiff alleged in her complaint against defendant that the delay in regaining cardiac and respiratory activity and oxygen to Samantha's brain was due to defendant's negligent performance of the NNR and that the attending pediatrician, Dr. Sharifi, failed to assess and timely treat Samantha.

Plaintiff's expert, Dr. Charles Falcone, opined that it was within the customary training of anesthesiologists who were educated in the early to mid-1990s to be trained in NNR as part of their residency programs. He further opined that, in the context of the St. Therese hospital setting that he had been made aware of, and considering the

persons available who possessed the level of training to provide NNR at St. Therese, defendant would have been an appropriate person to provide resuscitation to Samantha. Dr. Falcone further testified that resuscitation would have been part of the anesthesiology services required to be provided to all patients of St. Therese.

Dr. Kenneth Tuman, director of the American Board of Anesthesiology, testified that a determination of what specific services are "customarily" performed by anesthesiologists is made locally at the hospital in question. According to Dr. David Shoults, the chairman of anesthesia at St. Therese from 1987 to 2000, NNR was not a responsibility of the anesthesia group. The anesthesia group was not expected to run NNR emergencies at St. Therese. The group's NNR-related service was limited to intubating newborns delivered by cesarean section, but only if the pediatrician needed the assistance and the anesthesiologist could safely leave the mother. Dr. Shoults testified that anesthesiologists in his group were not required to intubate newborns delivered vaginally and he knew of no occasion prior to this case where an anesthesiologist had intubated a newborn delivered vaginally at St. Therese.

Defendant has no subspecialty in pediatric anesthesiology and, before this incident, had never been called to St. Therese as the on-call anesthesiologist to participate in an NNR. While a resident, defendant took the course and was certified in NNR by the American Academy of Pediatrics and the American Heart Association.

Plaintiff reached a settlement with Dr. Yang and St. Therese. Defendant moved for summary judgment, raising section 25 of the Act. The trial court granted defendant summary judgment, and plaintiff timely appeals.

## ANALYSIS

In every appeal from the entry of summary judgment, we conduct a *de novo* review of the evidence in the record. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002); *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 50 (1999). "Summary judgment is a drastic means of resolving litigation and should be allowed only when the right of the moving party is clear and free from doubt." *Bier*, 305 Ill. App. 3d at 50. "Therefore, where reasonable persons could draw divergent inferences from the undisputed material facts or where

there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." *Espinoza*, 165 Ill. 2d at 114.

On appeal, plaintiff first contends that the trial court erred in granting summary judgment, because defendant was the on-call physician contractually obligated to provide medical care to Samantha and, in order to obtain immunity under the Act, defendant was required to prove the absence of a preexisting duty to render care. Defendant contends that the trial court properly granted summary judgment in her favor because she established the requisite elements necessary for the application of the Act, and the Act does not require a physician to prove the added element of the absence of a preexisting duty to render aid.

At the time the alleged malpractice occurred, the following version of section 25 of the Act applied:

"Any person licensed under the Medical Practice Act of 1987 or any person licensed to practice the treatment of human ailments in any other state or territory of the United States, except a person licensed to practice midwifery, who, in good faith and without prior notice of the illness or injury, provides emergency care without fee to a person, shall not, as a result of their acts or omissions, except willful or wanton misconduct on the part of the person, in providing the care, be liable for civil damages." 745 ILCS 49/25 (West 1996).

In 1998, the legislature amended the Act and omitted the requirement that the treating physician act "without prior notice of the illness or injury." Pub. Act 90—742, § 40, eff. August 13, 1998. The pre-amended version of the Act applies here because a statute is presumed to apply prospectively only and cannot be given retroactive effect absent clear language within the statute indicating that the legislature intended such effect. See *Blanchard v. Murray*, 331 Ill. App. 3d 961, 967-68 (2002).

■ The preamended version of the Act immunizes a doctor from liability if a three-part test is passed: (1) the doctor must not have notice of the injury; (2) the doctor must provide emergency care; and (3) the doctor must not charge a fee. *Blanchard*, 331 Ill. App. 3d at 967. Plaintiff does not dispute that defendant satisfied these elements. Rather, plaintiff maintains that, in a case where a physician, such as defendant, has a particular employment contract requiring her to render resuscitation to patients, or, in other words, a preexisting duty to render such care to patients, then the aid the physician offers is not "voluntary" in the sense of a Good Samaritan. Plaintiff points out that the legislature addressed this limited applicability of the Act in the Act's legislative purpose statement, which provides:

"The General Assembly has established numerous protections for the generous and compassionate acts of its citizens who *volunteer* their time and talents to help others. These protections or good samaritan provisions have been codified in many Acts of the Illinois Compiled Statutes. This Act recodifies existing good samaritan provisions. Further, without limitation the provisions of this Act shall be liberally construed to encourage persons to *volunteer* their time and talents." (Emphasis added.) 745 ILCS 49/2 (West 1996).

Plaintiff argues that the Act applies only to those persons who volunteer their services and that, therefore, a court must address the additional element of whether the person claiming the Act's immunity was a "volunteer" with no preexisting duty to render care to the patient.

We must analyze this question under the rules of statutory construction. The primary rule of statutory construction requires courts to give effect to the intent of the legislature. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237 (1996). The best indication of the legislature's intent is the language of the subject statute, and courts must give clear and unambiguous terms in a statute their plain and ordinary meaning. *Brooks v. City of Peoria*, 305 Ill. App. 3d 806, 811 (1999). A court has no right to say that the legislature did not mean what the plain language of the statute provides. *In re D.L.*, 191 Ill. 2d 1, 9 (2000).

We find that the plain language of section 25 contains no requirement that a physician prove the absence of a preexisting duty to the patient for the Act to apply. Moreover, although the legislature indicated its desire to foster volunteerism in emergency medical cases in the preamble to the Act, it did not expressly require that a doctor be a "volunteer" to be immunized under section 25. The legislature required only that the doctor have no notice, provide emergency care, and not charge a fee. It is apparent that, in enacting section 25, the legislature intended to protect physicians who render emergency medical care from malpractice actions.

Plaintiff claims that, in those Good Samaritan immunity cases related to emergency care rendered in hospital settings, the courts have always assessed first whether there was a preexisting duty to render emergency aid. There are only a handful of cases in Illinois addressing section 25 of the Act under circumstances where emergency situations arose within hospital settings. While the Act was originally enacted to "encourage good samaritans to do the right thing on the streets of Illinois, *** without fear of repercussions in a court of law" (89th Ill. Gen. Assem., House Proceedings, March 25, 1996, at 100

(statements of Representative Lang)), it is clear that courts have liberally construed the plain language of the Act and have applied it to emergency situations at hospitals with physicians who allegedly had preexisting duties to assist in the emergencies. However, none of the cases imposes a requirement that the defense must establish the absence of a preexisting duty to render emergency aid.

In *Johnson v. Matviuw*, 176 Ill. App. 3d 907 (1988), the defendant physician had staff privileges at the hospital where the plaintiff, who was 37 weeks pregnant, was admitted. The defendant, who was attending to one of his own patients in the hospital, was summoned when the plaintiff experienced respiratory and cardiac arrest. The defendant assisted in resuscitation until the plaintiff's doctor arrived, but the plaintiff could not be resuscitated. The plaintiff and her child died. The administrator of the plaintiff's estate filed suit against the defendant and others, and the trial court granted the defendant's motion for summary judgment on the ground that he was immune pursuant to the Act. The plaintiff contended, *inter alia*, that as a staff member of the hospital, the defendant had a preexisting duty to assist in the emergency and, therefore, the Act did not apply. The *Johnson* court held that it was beyond its power to limit the ordinary meaning of the word "emergency" by adding "except when occurring in a hospital," and that the statute clearly applied to a physician like the defendant, who, in good faith and without prior notice of the illness, rendered emergency care without charging a fee. *Johnson*, 176 Ill. App. 3d at 917.

The *Johnson* court noted the few other states that have addressed the preexisting duty issue. A series of California Good Samaritan statutes is substantively similar to the Act except that hospital emergency room care is expressly covered in the event of a medical disaster, as are doctors called in to aid another doctor. See Cal. Bus. & Prof. Code §§ 2395, 2395.5, 2396 (Deering 1998). California courts have held that, when a doctor on a hospital medical staff happens to be in the hospital and gives emergency aid to a patient not his own, the doctor has no duty to that patient. See, *e.g.*, *Burciaga v. St. John's Hospital*, 187 Cal. App. 3d 710, 232 Cal. Rptr. 75 (1986). However, California has disallowed statutory immunity where there is a preexisting duty to render emergency aid, as in the case of members of a hospital's emergency call panel. See *Colby v. Schwartz*, 78 Cal. App. 3d 885, 144 Cal. Rptr. 624 (1978). The *Johnson* court also noted that a Georgia statute exempts from liability doctors who in good faith give emergency care "at the scene of an accident or emergency" with no charge. Ga. Code Ann. § 51—1—29 (1987). A Georgia court interpreted that statute to be applicable to emergency care rendered in a hospital

by a physician, but held that summary judgment was inappropriate because issues of fact existed as to whether the doctors involved were protected under the statute in light of requirements in the hospital's rules and regulations relating to their duties. *Clayton v. Kelly*, 183 Ga. App. 45, 357 S.E.2d 865 (1987). The *Johnson* court believed that, if the legislature so intended, it could have specifically included in the Act emergencies occurring within a hospital or other licensed medical care facility. However, given the clear language of the statute, the courts must apply the Act as written and any changes in the scope of its protection are within the realm of the legislature, not the courts. *Johnson*, 176 Ill. App. 3d at 918.

In *Roberts v. Myers*, 210 Ill. App. 3d 408 (1991), the defendant had staff privileges at the hospital and was attending one of his own patients when he was called to assist with the plaintiff, who was experiencing labor pains. A nurse was unable to detect any fetal heart tones and the defendant was summoned to conduct an emergency delivery. The plaintiff's expert testified that there was no indication of fetal distress until the plaintiff was taken to the delivery room. No question was directly raised regarding a preexisting duty. Rather, the question was indirectly raised in the context of whether the defendant was "on call" in the sense that he was covering for the plaintiff's own obstetricians and therefore should have been held to have had complete knowledge of her condition. *Roberts*, 210 Ill. App. 3d at 415. In his deposition, the defendant testified that he was not on call and that his progress notes were entitled "Covering Attending Delivery Note" simply because he was the one delivering the baby. *Roberts*, 210 Ill. App. 3d at 411-12. Moreover, the evidence showed that the defendant did not have notice of the illness or injury. The *Roberts* court affirmed summary judgment for the defendant, holding that there was no question of fact precluding the trial court's decision that the defendant did not have notice of the illness or injury. *Roberts*, 210 Ill. App. 3d at 417.

In *Villamil v. Benages*, 257 Ill. App. 3d 81 (1993), the defendant physician was in the hospital attending to his own patient when he was called into the operating room to deliver the plaintiff's baby. The question of whether the defendant was on call was raised in the context of whether the defendant provided emergency care to the plaintiff. The court noted that it was undisputed that the defendant was not on call but that he did, in fact, provide emergency care to the plaintiff, and the court affirmed summary judgment in favor of the defendant based upon the Act. *Villamil*, 257 Ill. App. 3d at 92.

Finally, in *Blanchard v. Murray*, 331 Ill. App. 3d 961 (2002), the defendant physician was on call at home when he was informed of the

baby's heart decelerations and summoned to the hospital for the sole purpose of delivering the baby. The plaintiff argued that the issue of whether the defendant was on call went to whether he owed a duty to respond. The plaintiff asserted that if the defendant did not have a duty to respond, then the " ' "need to encourage physicians to render emergency medical care when they otherwise might not" prevails over the policy of vindicating the rights of a malpractice victim.' " *Blanchard*, 331 Ill. App. 3d at 972, quoting *McKenna v. Cedars of Lebanon Hospital, Inc.*, 93 Cal. App. 3d 282, 288, 155 Cal. Rptr. 631, 635 (1979), quoting *Colby*, 78 Cal. App. 3d at 892-93, 144 Cal. Rptr. at 629. The *Blanchard* court noted that, while the court in *Johnson* cited *Colby*, it did so in the context of pointing out how other jurisdictions have dealt with the issue of when Good Samaritan statutes apply to given situations. However, in applying the plain language of the Act to the facts of the case, the *Blanchard* court recognized that whether the defendant was on call when he responded to the request for assistance was relevant only in terms of the notice requirement, *i.e.*, whether he had "prior notice of the illness" within the meaning of section 25. *Blanchard*, 331 Ill. App. 3d at 972. The *Blanchard* court did not adopt an additional preexisting duty requirement based on the defendant's on-call status, preexisting duty, or contractual relationship with the hospital but confined the analysis to the three elements set forth under section 25 of the Act. Accordingly, the court concluded that because the defendant received the phone call at home, was told of the nature of the plaintiff's illness, and then elected to leave home and drive to the hospital for the sole purpose of treating the plaintiff and performing the surgery, he had prior notice of the illness within the meaning of the Act. Because these facts established that no genuine issue of material fact existed as to whether the defendant had prior notice of the injury or illness, the court was required to find that the Act did not immunize the defendant from liability and to reverse the trial court's grant of summary judgment in favor of the defendant. *Blanchard*, 331 Ill. App. 3d at 972-73.

■ Based on the clear language of the Act and a review of the relevant Illinois case law, we hold that a physician need not prove the absence of a preexisting duty to render aid to the patient in order to be immunized under section 25 of the Act. Rather, we agree with *Blanchard* that the preexisting duty or on-call status of a physician is relevant only in terms of the notice requirement set forth under section 25. Here, we find that defendant's involvement paralleled that of the doctors in *Johnson*, *Roberts*, and *Villamil*, where the physicians were in the hospital treating other patients when they were asked to assist with an unfamiliar patient needing emergency assistance.

Defendant had no physician-patient relationship with plaintiff and no contact with her during her labor or delivery. Thus, defendant had no prior notice of the impending emergency. Plaintiff concedes that defendant was not aware of the patient, the delivery, or any emergency regarding the delivery until she was requested to lend assistance to resuscitate Samantha. Because plaintiff does not dispute that defendant established the three elements required by section 25 of the Act, and we find that there are no other elements required, we must affirm the trial court's order granting summary judgment in favor of defendant.

It is clear that the Act grants immunity to encourage physicians to give aid without fear of repercussions in a court of law. See 89th Ill. Gen. Assem., House Proceedings, March 25, 1996, at 100 (statements of Representative Lang). Significantly, we note that, upon amending the Act in 1998, the Illinois legislature had the opportunity to limit the Act's protection to doctors who had established the absence of a doctor-patient relationship or a preexisting duty. Instead, the legislature removed the notice requirement and therefore broadened rather than limited the Act's application. See 745 ILCS 49/25 (West 2002). The *Blanchard* court noted that 6 states' Good Samaritan statutes expressly allow immunity in hospitals, 12 other state statutes expressly disallow such immunity, and courts in 2 other states have held that emergency care in hospitals is not granted such immunity. S. Reuter, *Physicians as Good Samaritans*, 20 J. Legal Med. 157, 193 (1999). Although Dr. Stewart Reuter, the author of the article cited above, proposes that a uniform Good Samaritan statute be enacted to disallow immunity to doctors who render emergency aid to patients in hospitals, physicians' offices, or other health care facilities (20 J. Legal Med. at 191), we must apply the Act as it is written, and any change must be done by the legislature.

Plaintiff next argues that genuine issues of material fact exist as to whether defendant had a preexisting duty to provide NNR to Samantha and, thus, was not a volunteer entitled to immunity. We perceive plaintiff's second argument to be substantially similar to her first argument. Moreover, because we find that defendant's preexisting duty to respond to the emergency is not an additional element under the Act but is relevant only in terms of notice, we need not address this argument.

For the preceding reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN and CALLUM, JJ., concur.