No. 2--06--0587     Filed: 6-20-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| BARTON E. MUNO and DARLENE E. MUNO, Independent Co-Administrators of the Estate of Andrew Muno, Deceased, | ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 00--L--895 |
| CONDELL MEDICAL CENTER, ANDREW J. KONTRICK, and ANDREW J. KONTRICK, S.C., | ) ) ) ) ) | |
| Defendants | ) ) ) | |
| (Dale S. Gordon and Lake County Anesthesiologists, Ltd., Defendants-Appellants). | ) ) ) | Honorable Stephen E. Walter, Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the Court:

Defendants Dale S. Gordon, M.D., and Lake County Anesthesiologists (LCA) appeal the judgment, after a jury trial, awarding $6,300,000 (after setoffs based on settlements of other codefendants not parties to this appeal) to plaintiffs, Barton E. Muno and Darlene E. Muno (as co-administrators of the estate of their deceased minor son, Andrew Muno), in connection with defendants' alleged negligence leading to Andrew's death.

Defendants argue that the trial court should have entered judgment notwithstanding the verdict on their defense under section 25 of the Good Samaritan Act (Act) (745 ILCS 49/25 (West

2000)), which defense was based on Gordon's decision not to bill Andrew's family for his treatment. Judgment notwithstanding the verdict may be entered only where " 'all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.' " Maple v. Gustafson, 151 Ill. 2d 445, 453 (1992), quoting Pedrick v. Peoria & Eastern R.R. Co., 37 Ill. 2d 494, 510 (1967). "In ruling on a motion for a [judgment notwithstanding the verdict], a court does not weigh the evidence, nor is it concerned with the credibility of the witnesses; rather it may only consider the evidence, and any inferences therefrom, in the light most favorable to the party resisting the motion." Maple, 151 Ill. 2d at 453.

The Act, which was enacted to codify "numerous protections for the generous and compassionate acts of *** citizens who volunteer their time and talents to help others" (745 ILCS 49/2 (West 2000)), provides that any licensed physician "who, in good faith, provides emergency care without fee to a person, shall not, as a result of his or her acts or omissions, except willful or wanton misconduct on the part of the person, in providing the care, be liable for civil damages" (745 ILCS 49/25 (West 2000)).

As we considered this issue, our research uncovered some authority challenging our previous interpretations of the Act and instead interpreting it in a way that would render it inapplicable here, even if Gordon's decision not to bill was in good faith. We granted the parties leave to address the conflicting interpretations of the Act, and both parties submitted supplemental briefing on the issue, which we now summarize.

In Estate of Heanue v. Edgcomb, 355 Ill. App. 3d 645 (2005), we held that a doctor performs emergency care "without a fee" so as to receive immunity under the Act whenever he or she does not "charge[] a fee specifically for the services at issue," even if the doctor derived indirect economic benefits (such as compensation) from the care. Heanue, 355 Ill. App. 3d at 648-50. This holding followed previous case law, which held that "a physician need not prove the absence of a preexisting

duty to render aid to the patient in order to be immunized under *** the Act." Neal v. Yang, 352 Ill. App. 3d 820, 829 (2004) (examining cases and holding that the Act could apply to a doctor with a preexisting duty). Heanue then added the caveat that, under the language of the statute, the decision not to bill must be made in good faith. Heanue, 355 Ill. App. 3d at 650.

The approach taken in Heanue, Neal, and the cases that precede them was criticized in Henslee v. Provena Hospitals, 373 F. Supp. 2d 802 (N.D. Ill. 2005). The court in Henslee noted that, though the Act was created to protect volunteer doctors " 'on the streets of Illinois' " (Henslee, 373 F. Supp. 2d at 808, quoting 89th Ill. Gen. Assem., House Proceedings, March 25, 1996, at 100 (statements of Rep. Lang)), "Illinois courts have primarily used the [Act] to immunize doctors in the context of an emergency situation arising within a hospital" (Henslee, 373 F. Supp. 2d at 808). Thus, "the manner in which Illinois courts have been applying the [Act] appears to expand coverage beyond the stated purpose of the Act." Henslee, 373 F. Supp. 2d at 809.

The basis for this court's holdings that the Act may immunize a doctor with a preexisting duty was the plain language of section 25 of Act, which contains no explicit requirement "that a physician prove the absence of a preexisting duty to the patient for the Act to apply." Neal, 352 Ill. App. 3d at 826. Instead, the only explicit limitations on immunity from negligence under section 25 are the requirements that the physician, in good faith, provide emergency care "without fee." Cf. Neal, 352 Ill. App. 3d at 826 (under a previous version of the Act that included a now-removed requirement that the physician not have notice of the emergency, "[t]he legislature required only that the doctor have no notice, provide emergency care, and not charge a fee"). Without any further limitations expressed in the language of the Act, we have adhered to the familiar maxim of statutory construction that forbids reading exceptions, limitations, or conditions into a statute where the legislature did not express any. See Heanue, 355 Ill. App. 3d at 650, quoting County of Lake v. Board of Education of Lake Bluff School District No. 65, 325 Ill. App. 3d 694, 701 (2001).

Henslee suggested a new approach. It noted that the Illinois decisions on the issue all assumed the language of section 25 of the Act to be unambiguous on its face. Henslee, 373 F. Supp. 2d at 812. However, Henslee argued that, as used in section 25, the phrase "without a fee" allows more interpretations than we have previously acknowledged. "[T]he typical fee transaction implicitly includes two steps: first, a party is billed; second, a professional is paid." Henslee, 373 F. Supp. 2d at 812. (Our decisions have considered only the first step.) The Act does not provide a definition for the word "fee" to clarify this ambiguity, nor does it expressly restrict the meaning of the word to "only one side of the typical fee transaction." Henslee, 373 F. Supp. 2d at 812. Thus, "a reasonable definition of 'fee' would be a situation in which either a doctor is paid for his services or the client pays a bill for those services." (Emphasis in original.) Henslee, 373 F. Supp. 2d at 812. If the Henslee court had adopted this second definition of the word "fee," it would have created a situation in which immunity under the Act would depend on whether a doctor is an employee who is paid for his or her services or an independent contractor or partner who would not be paid for his or her services if a bill were not sent. We think this result unlikely to have been envisioned by the legislature when it enacted the Act. However, the Henslee court avoided this problem by eschewing the second definition of the word "fee" just as it had the first. Instead, the court used the competing definitions of the word "fee" to conclude that section 25 was ambiguous, so that it could invoke yet a third definition.

After finding section 25 ambiguous based on the competing definitions above, the court in Henslee turned to the purpose of the Act to determine the scope of immunity intended under section 25. The purpose of the Act, to protect and encourage citizens who "volunteer their time and talents" (emphasis added) (745 ILCS 49/2 (West 2000)), indicated to the Henslee court an intent to exclude those citizens who are paid to perform emergency services and those citizens who are duty-bound to perform emergency services. Henslee, 373 F. Supp. 2d at 812-13. Accordingly, Henslee

concluded, a doctor who performs emergency care as part of his employment, or otherwise not as a volunteer, cannot be said to have performed those services "without fee" and thus cannot win immunity under the Act.

In their supplemental briefing, plaintiffs urge that we follow Henslee and hold that, since Gordon was not acting as a volunteer, he was ineligible for protection under the Act. Plaintiffs therefore argue that based on the Act we must affirm the trial court's decision not to award defendants judgment notwithstanding the verdict. For their part, defendants dispute the interpretation proffered in Henslee. Armed with the interpretive maxim that a court must evaluate a statute as a whole, with each provision construed in connection with every other section (Paris v. Feder, 179 Ill. 2d 173, 177 (1997)), defendants direct us to other sections of the Act, which require that emergency care be provided "without fee or compensation." See 745 ILCS 49/12 (West 2006) (person who renders emergency care with a defribulator "in good faith, not for compensation" is immune); 745 ILCS 49/20 (West 2006) (person providing care at a free dental clinic "who receives no fee or compensation" is immune); 745 ILCS 49/30(a) (West 2006) (same for person providing care at a free medical clinic). Thus, defendants argue, the legislature did in fact distinguish between what Henslee called the "two steps" of a typical fee transaction--in other sections of the Act, it considered the term "fee" to be separate from the term "compensation." Defendants continue that, since the legislature in section 25 extended immunity to emergency care providers who work "without fee" instead of "without fee or compensation," the legislature must have intended to extend immunity under that section to providers who work for compensation. Plaintiffs, on the other hand, urge that, if we are to consider the Act as a whole in order to interpret section 25, we should consult section 2 (as the court in Henslee did) and interpret the Act as applying to volunteers only.

Both sides of this dispute have raised persuasive points that Illinois courts apparently have yet to consider. However, we leave the resolution of this dispute for another day, as, under the facts

of this particular case, we would reject defendants' argument under either interpretation of the Act: even if the only relevant limitation to be placed on the immunity afforded under section 25 of the Act is the "good faith" limitation articulated in Heanue, we agree with the trial court's decision to deny defendants' motion for judgment notwithstanding the verdict.

Defendants argue that the evidence on the issue of whether Gordon's decision not to bill was in good faith "is entirely one-sided," because the only evidence adduced on the issue was Gordon's testimony that he was not aware of the Act at the time he made his decision and that he decided to forgo the fee because he felt that doing so was the appropriate action under the circumstances. Though defendants are correct that Gordon testified that his decision not to bill was in good faith, the jury was free to discredit his testimony, as it apparently did. There was also testimony that Gordon met with Condell's anesthesiology department head, Dr. Marquardt, for an extended period of time after Andrew's operation. Though Gordon denied it, plaintiffs' counsel raised the inference that the two then decided for legal reasons that they should not send plaintiffs a bill. The jury was free to accept this inference. There was also starkly conflicting evidence as to whether Gordon actually met with plaintiffs before Andrew's surgery. If the jury credited plaintiffs' testimony over Gordon's, it may have reached the further inference that Gordon had improperly molded his testimony in an effort to avoid liability. A decision to discredit his testimony regarding his motivations would have been consistent with this further inference. Thus, construing the evidence in the light most favorable to plaintiffs, we conclude that judgment notwithstanding the jury's verdict would have been inappropriate here.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

BOWMAN and HUTCHINSON, JJ., concur.